## WEAVER v. MURRAY.

1. EVIDENCE—MATERIALITY—CONSPIRACY.

In an action for a sum due under a contract, which defendant admitted, but claimed had been compromised by the making of a subsequent agreement in place thereof, evidence of other litigation of the defendant, and garnishment proceedings in this action affecting the other cases, was properly excluded as immaterial, although offered to show that the motive of plaintiff was fraudulent.

2. TRIAL—CONDUCT OF COURT.

It was not improper conduct of the trial court, upon cross-examination of a witness, after an objection made by counsel, and, on referring back to a previous question and answer, to say, "Of course, he denied it," when it is apparent that the court merely asked for information and referred to the effect of the question and answer.

3. CONTRACTS—INSTRUCTIONS TO JURY—TRIAL—COMPROMISE AND SETTLEMENT.

It was not erroneous to charge the jury that the compromise

which defendant claimed was made, of plaintiff's admitted claim, must be shown by a preponderance of the evidence, and that the mere fact that defendant did work which was of value, could not be considered as canceling the indebtedness of defendant to plaintiff, unless it was done in pursuance of the alleged compromise.

Error to the superior court of Grand Rapids; Stuart, J. Submitted October 26, 1910. (Docket No. 113.) Decided December 22, 1910.

Assumpsit by Milton S. Weaver against A. Linn Murray upon a contract to pay plaintiff a specified amount. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Maher & Barnard*, for appellant.

*Richard C. Goodspeed*, for appellee.

HOOKER, J. The plaintiff brought an action of assumpsit against the defendant and recovered. Defendant has appealed.

So far as the pleadings show, the action was based upon a settlement and written agreement between them, and a promise by defendant to pay plaintiff $190.43. The defendant pleaded the general issue and a later agreement that the amount should be considered paid, if defendant should succeed in buying up certain notes of the company, together with certain stock held by the payees, at 50 cents on the dollar, said stock to be divided equally between plaintiff, defendant, and one Goodspeed. There was no dispute upon the trial as to indebtedness of $190.43. There was conflicting testimony as to the making and performance of the alleged agreement claimed by the defendant as a payment, and the judge told the jury in his charge that if that agreement was made, the verdict should be for the defendant, and if not shown by a preponderance of the proof, the verdict must be for the plaintiff. The charge was a helpful one, presenting in a clear-

cut way the vital points, and not embarrassing or befogging the jury by an unnecessary discussion of the evidence or immaterial testimony.

1. **Motion for New Trial.** The court did not err in denying the motion for new trial. We think the verdict has not been shown to be against the weight of evidence, nor do we find evidence of any prejudice in the minds of the jury.

2. **Evidence of Malice.** Counsel offered in evidence certain proceedings in three other cases and a garnishee proceeding in this case. We do not readily find them in the record, except the garnishee proceedings, and counsel has made no reference to the pages where they are to be found. In his brief he says that they were offered to show that this suit was being prosecuted fraudulently, maliciously, and without cause, and claimed a conspiracy existed to defraud and embarrass defendant in collecting claims due him from the company. In offering it counsel said :

"*The Court:* I don't think I would want to go into anything except as to whether that stock was given in payment of this settlement.

"*Mr. Maher:* We have the right to show what the purposes of this suit are, that they were fraudulent and as tending to corroborate the claims that it is so, that the settlement was made, and that notwithstanding the settlement this suit was brought. We propose to show a series of acts on the part of this man and his associates all of which have been for the purpose of defrauding Mr. Murray and preventing him from collecting what was owing to him by the Inner Shoe Tire Company. We do not propose to go into any cases that have not been tried; we propose to go into only the undisposed of matters."

We do not set forth the colloquy at length. It seems to us as obvious as it did to the trial judge that these matters were foreign to the issue, which was a narrow one, and that it was proper to exclude this testimony.

3. **Remark of Court.** Plaintiff had testified that although he received his share of the stock purchased at 50 cents on the dollar, he had at once given it to James Fox

at the suggestion of Goodspeed. The natural inference
was that he did not care to take it. Counsel says that
this testimony was well calculated to prejudice the jury
and the following occurred on the cross-examination of
defendant:

"*Q.* (Mr. Goodspeed to Mr. Murray). You don't re-
member that Mr. Weaver said that he didn't want that
stock; that he hadn't done anything for it?

"*A.* No, sir; he did not say it?

"*Q.* And he wanted to give it to Mr. Goodspeed be-
cause Mr. Goodspeed had put the idea through?

"*A.* Never said anything of that kind in my presence.

"*Q.* Were you there when this took place?

"*A.* I was there when my stock was handed to me. I
presume Mr. Weaver got his at the same time; it was
written off.

"*Q.* You say something of that kind was said?

"*A.* There certainly was not in my presence.

"*Q.* Were you there when Mr. Goodspeed said if he
wanted to give it to somebody to give it to James Fox?

"*A.* No, sir.

"*Q.* You were not there then?

"*A.* No, sir.

"*Mr. Maher:* I object to that question as assuming
that Goodspeed said it, and ask that the question and an-
swer be stricken out.

"*Mr. Goodspeed:* We may show this was said.

"*The Court:* What is the question? (Last question
and answer read.)

"*The Court:* Of course, he denied it.

"*Mr. Goodspeed:* He states he didn't hear any such
thing; I think that covers it.

"*The Court:* It may stand.

"*Mr. Maher:* An exception."

It is apparent that the court was asking information as
to the question and answer objected to, and not making a
statement that, "Of course, he denied it." There was no
error in this.

4. Charge. The court said:

"Now the transaction that took place in regard to this
stock as I have said, if it took place, as the defendant
claims and has testified in regard to, if you are satisfied

of that by a preponderance of the evidence, that would be a defense. But the mere fact that the defendant Murray did work in connection with buying up this stock, bringing it in so it could be divided, I say that mere fact alone would not and could not be considered by you as wiping out this indebtedness between him and Weaver, the plaintiff; the mere fact that he did work that was valuable and that enabled the plaintiff to obtain this stock; that mere fact alone of his getting something valuable could not be considered as an offset or cancellation of this indebtedness without this agreement that the defendant claims Weaver made in regard to it. And the mere fact that Mr. Weaver received a thousand dollars' worth of stock, or any amount of stock, by this agreement of Mr. Goodspeed's, could not be considered as an offset to this claim, unless, as I have said, he agreed to receive it in the way that Mr. Murray has stated. In other words, this money as it appears by this agreement was to be furnished by Goodspeed and Goodspeed was distributing this stock. If it was a present from Goodspeed, it was a present from Goodspeed to each of these men who were running the business and trying to put it upon its feet. He could have kept all this, I suppose; he could have bought up these notes and could have kept it all, but he made the agreement to divide up with the other two in the company, so that that was a gratuity, so to speak, on the part of Goodspeed. But if, in connection with that, Mr. Murray, by reason of Weaver's not going out and helping him, got him to say that he would release him from the indebtedness if he brought that about and take that stock, then I say, if that is made out by a preponderance of the evidence, that would be a defense, but the mere fact alone that he got something valuable for nothing from Goodspeed would not of itself cancel the indebtedness."

We see nothing here justifying a reversal.

The judgment is affirmed.

BIRD, C. J., and OSTRANDER, MOORE, and McALVAY, JJ., concurred.